**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 20-362** |
| | : | |
| **MARK CHAMBERLAIN** | : | |

# <u>O R D E R</u>

**AND NOW**, this            day of                  , 2021, upon consideration of Defendant Mark Chamberlain's Motion to Suppress Physical Evidence and Statement, the government's response thereto, and the hearing held in connection with this matter, it is hereby **ORDERED** that the Motion is **GRANTED**.

Any and all physical evidence obtained from Mr. Chamberlain's residence located at 2139 Anchor Street, Philadelphia, Pennsylvania, and any statement he made following his arrest, are hereby **SUPPRESSED**.

It is so **ORDERED**.


**BY THE COURT:**


_____
**THE HONORABLE MITCHELL S. GOLDBERG**
UNITED STATES DISTRICT COURT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 20-362** |
| | : | |
| **MARK CHAMBERLAIN** | : | |

## DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENT

Mark Chamberlain respectfully moves this Court to suppress all physical evidence seized on April 22, 2019, from his home located at 2139 Anchor Street, Philadelphia, Pennsylvania, as well as any and all statements he made following his arrest. The search of Mr. Chamberlain's home violated the Fourth Amendment because the warrant authorizing the search was not supported by probable cause, and, therefore, all items seized are fruits of the poisonous tree. Because officers used the illegal search to coerce Mr. Chamberlain to confess to the existence of contraband in his home, any statements made following his arrest were both involuntary and fruit of the illegal search and must also be suppressed.

**WHEREFORE**, for all of the reasons set forth in the accompanying Memorandum of Law, and for any reasons that may become apparent at a hearing, the defense respectfully requests that the Court suppress all the physical evidence seized from Mr. Chamberlain's home, and statements he made, on April 22, 2019.

Respectfully submitted,

*/s/ Mark Wilson*
**MARK WILSON**
Assistant Federal Defender

**JAKE O'DONNELL**
Research and Writing Attorney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 20-362** |
| | : | |
| **MARK CHAMBERLAIN** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENT**

Officers from the Philadelphia Police Department searched Defendant Mark

Chamberlain's home on April 22, 2019, pursuant to a local search warrant that failed to set forth

probable cause to believe evidence of a crime would be found within the house. As a result, the

search warrant was invalid. Because the good faith exception cannot save the unlawful search, all

evidence obtained from 2139 Anchor Street must be excluded from trial. In addition, officers

used the illegal search to coerce Mr. Chamberlain to confess to the existence of contraband in his

home. As such, his statement was both involuntary and fruit of the illegal search and must also

be suppressed.

## I.     Facts & Procedural History

On Monday April 15, 2019, Philadelphia Police Officers Mangold and Winscom passed

along information that a black male named Ron with the phone number (215) 609-7495 was

selling drugs in the area of Anchor Street and Torresdale Avenue. On Tuesday April 16, 2019,

Officers Jeffrey Galazka, Ernest Brown, Bryan Sumter, Rodney Eleazer, Sergeant Patrick Love,

and Lieutenant Robert Muldoon went to the area of Anchor Street and Torresdale Avenue.

Meanwhile, Officers Tyra DeVeaux and Timothy Bogan met with a confidential informant (CI

#1417). Officer Bogan dialed the (215) 609-7495 number. The phone rang, a male voice answered, and the phone was handed to CI #1417 who set up a drug purchase at 5400 Torresdale Avenue. Backup officers were deployed to the area.

While CI #1417 waited on location, a Nissan Quest with Pennsylvania tag #KYZ-0624 arrived, driven by an unidentified black male. The CI entered the vehicle for approximately one minute before exiting. CI #1417 returned to Officers Bogan and DeVeaux and turned over two zip-lock bags containing crack/cocaine. Six backup officers followed the Nissan Quest. The driver parked the vehicle in the area of Anchor Street and Tulip Street. Officers circled the block and lost sight of the driver. Officer Galazka conducted a Bureau of Motor Vehicles (BMV) search and discovered that the vehicle was registered to a Mark Chamberlain at 1235 S. 58th Street.

On April 17, 2019, Officers Bogan and DeVeaux unsuccessfully attempted to locate the Nissan Quest in the area of 1200 S. 58th Street.

On April 18, 2019, between the hours of 11 AM and 3 PM, Officers Bogan and DeVeaux met with CI # 1417 to set up a controlled buy. Officers Bogan and DeVeaux unsuccessfully attempted to locate the Nissan Quest in the area of Anchor Street and Tulip Street. Officer Bogan dialed the (215) 609-7495 number. The phone rang, and once again a male voice answered, and the phone was handed to CI #1417 who set up a drug purchase. Officers Galazka, Eleazer, and Lieutenant Muldoon were deployed to the area.

An unidentified black male walked to the area of 2100 Sanger Street, motioned for the CI to approach, and completed a hand to hand exchange. CI #1417 returned to Officer Bogan's vehicle and turned over two loose chunks of crack/cocaine. Meanwhile, the black male left on foot. Sometime after the transaction, Officer Bogan saw a black male enter a property on the

2100 block of Anchor Street. Based on the description of the property, Officers Galazka and Eleazer obtained the address of 2139 E Anchor Street. At some point, Officers Bogan and DeVeaux saw the Nissan Quest parked in front of the 2139 E. Anchor Street Address. A real estate check showed that Jean Paul Gulle owned the property and James Rose was registered to vote at the property.

Based on the two drug sales described, Officer Bogan requested a search warrant for 2139 Anchor Street, which was approved on April 21, 2019.

On April 22, 2019, law enforcement organized a "buy/bust" operation. Officer Bogan directed CI #1417 to arrange a purchase with the individual using the (215) 609-7495 number. Officers DeVeaux, Galazka, Bogan, Rola, Werner, Wertz, Eleazer, and two supervisors were in the area. Once again Officer Bogan dialed the (215) 609-7495 number and a male voice answered. CI #1417 set up a purchase and Officers took him to the area of Sanger Street and Torresdale Avenue. Officers saw a black male leave 2139 Anchor Street and walk to the CI's location. The black male and the CI conducted a hand to hand exchange. The CI turned over several loose chunks of crack/cocaine. Meanwhile, the black male allegedly returned to 2139 Anchor Street. At approximately 4:30 PM officers knocked and announced a police search warrant at 2139 Anchor Street. Police breached the front door and apprehended Mr. Chamberlain inside the home.

From Mr. Chamberlain's person, police allegedly recovered 1 packet of heroin, 26 suboxone strips, 7 clear packets of crack/cocaine, $420 USC, 1 .38 revolver with 6 rounds of ammunition, and one cell phone that is alleged to be the (215) 609-7495 number. While he was in custody, Mr. Chamberlain provided an involuntary statement regarding the location of contraband in his home. Officer Galazka subsequently located a shotgun in the rafters of the

basement. Also recovered from the basement was a clear plastic container holding 4 pills of alleged Oxycodone.

On October 15, 2020, the government filed an Indictment charging Mr. Chamberlain with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) and possession of a firearm not registered in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5861(d), 5845, and 5871.

## II.    Discussion

The affidavit in support of the warrant to search 2139 Anchor Street lacked sufficient facts establishing that 2139 Anchor Street was possessed by, or the domicile of, the drug dealer. Additionally, the affidavit failed to connect alleged drug activity to the address. As such, Officer Bogan failed to establish a fair probability that evidence of drug-dealing would be found in 2139 Anchor Street, and the issuing magistrate judge did not have a substantial basis for determining that probable cause existed to search 2139 Anchor Street. The good faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897, 900 (1984), does not apply, and the proceeds of the search must be suppressed as the fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Likewise, because Officer Galazka and Sergeant Love used the illegal search to compel a statement from Mr. Chamberlain following his arrest, that statement must be suppressed as involuntary and fruit of the poisonous tree.

### A.    The Search Warrant Did Not Establish That Evidence of the Alleged Crime Would Be Found In 2139 Anchor Street

A core principle of the Fourth Amendment dictates that probable cause must exist for a search warrant to issue. U.S. Const. Amend IV. "A magistrate judge may find probable cause when, viewing the totality of the circumstances, 'there is a fair probability that contraband or

evidence of a crime will be found in a particular place.'" *United States v. Hodge*, 246 F.3d 301,

305 (3d Cir. 2001) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Therefore, a search

warrant is only valid if the "magistrate [judge] who issued the warrant had a substantial basis for

determining that probable cause existed." *United States v. Zimmerman*, 277 F.3d 426, 432 (3d

Cir. 2002) (internal quotation marks omitted).

In assessing a search warrant request the "starting point is that a magistrate judge may

infer probable cause from the type of crime, the nature of the items sought, the suspect's

opportunity for concealment and normal inferences about where a criminal might hide . . .

[evidence]." *Stearn*, 597 F.3d at 558. Considering those factors, the magistrate may infer "that a

drug dealer in some circumstances may use his home to store evidence associated with drug

dealing." *Id.* at 558-59. However, despite that inference, "the Fourth Amendment precludes the

search of a home lacking a nexus to the alleged crimes." *Id.* at 558. In *Stearn*, the Third Circuit

reaffirmed the holding in *United States v. Burton*, 288 F.3d 91 (3d Cir. 2002) that an issuing

judge may infer that a suspected drug dealer is storing evidence of his drug crimes in his

residence if three preliminary premises are met: (1) "the person suspected of drug dealing is

actually a drug dealer"; (2) "the place to be searched is possessed by, or the domicile of, the

dealer"; and (3) "the home contains contraband linking it to the dealer's activities." *Id.* at 559

(quoting *Burton*, 288 F.3d at 104).

With regard to the second *Burton* prong, an informant's tip combined with police

surveillance showing that the defendant stays at the residence is sufficient to show the place to be

searched is possessed by, or the domicile of, the drug dealer. *See United States v. Stearn*, 597

F.3d 540, 563–64 (3d Cir. 2010) (finding sufficient support in the affidavit for the premise that

the property searched was one of the appellees' residence based on an informant's tip averring

that the appellee resided there and subsequent surveillance confirming that the appellee had stayed there one night with his vehicle); *United States v. Rosario*, 837 F. App'x 117, 120 (3d Cir. 2020), *cert. denied*, No. 20-7459, 2021 WL 1520956 (U.S. Apr. 19, 2021) (finding sufficient support in the affidavit for the premise that the property searched was the defendant's domicile where law enforcement received a tip about where the defendant was staying and confirmed through multiple days of surveillance that the defendant was staying there). Police investigation may also show that a drug dealer resides at a particular residence. *See United States v. Sarraga-Solana*, 263 F. App'x 227, 229 (3d Cir. 2008) (police conducted a record check which revealed that the electric bills at the residence in question were in the name of the defendant). Law enforcement may also get information from neighbors about a defendant's residence. *See United States v. Servance*, 394 F.3d 222, 230 (4th Cir.), cert. granted, judgment vacated on other grounds, 544 U.S. 1047 (2005) ("While the apartment to be searched was leased in the name of a female, a resident of the building [. . .] had identified [the defendant] as a five-month resident of Apartment L.").

The third *Burton* prong specifically amended the inference that probable cause to search a defendant's residence exists solely based on evidence suggesting that the defendant is a drug dealer. *See id.* "In demanding some evidence 'that the home contains contraband linking it to the drug dealer's activities,'" the Third Circuit moored its " 'drug dealer' inferences back to the 'practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Gates*, 462 U.S. at 238). "[T]he search of a drug dealer's home would be unreasonable if the affidavit suggested no reason to believe contraband would be found there." *Id.*

When assessing the required nexus between a defendant's drug-dealing activities and his home, courts may consider the following non-exhaustive list of factors: (1) large-scale operations; (2) a defendant's attempts to evade officers' questions about his address; (3) the conclusions of experienced officers regarding where evidence of a crime is likely to be found; (4) the proximity of the defendant's residence to the location of criminal activity; (5) probable cause to arrest the defendant on drug-related charges; and (6) the tip of a concerned citizen that a specific stolen item would be found in the defendant's residence. *Id.* at 559-60 (internal quotation marks and citations omitted).

Although the decision of the magistrate should be accorded deference, reviewing courts should not "rubber stamp" the decision to issue a warrant. *See id.* at 554. In making a "substantial basis" inquiry, this Court must "confine[] itself to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record." *Hodge*, 246 F.3d at 305.

Here, Officer Bogan failed to provide evidence specifically showing that the place to be searched was possessed by, or the domicile of, the alleged dealer, or that there was a fair probability that 2139 Anchor Street contained contraband linking it to the dealer's activities. As such, Officer Bogan failed to establish *Burton* prongs two and three.

1. *Officer Bogan failed to provide evidence that the place to be searched was possessed by, or the domicile of, the dealer.*

The affidavit of probable cause is almost entirely devoid of evidence that 2139 Anchor Street was possessed by, or the domicile of, the alleged dealer they saw enter the building on April 18. When Officer Bogan applied for a search warrant, police did not know who they were investigating. Police allegedly received information that a person named "Ron" was selling drugs

with the phone number (215) 609-7495. Law enforcement never identified "Ron." Police conducted two controlled buys using a confidential informant. During the first controlled buy, police conducted a BMV search using the license plate of the Nissan that arrived on scene which showed the registered owner being Mark Chamberlain. The registration address on file for the vehicle was an address in West Philadelphia, nowhere near the scene of the two controlled buys. The recitation in the affidavit includes no mention of whether any attempt was made to match the photograph of Mark Chamberlain on record with the Bureau of Motor Vehicles with the alleged dealer whom several officers had seen. No assertion was made in the affidavit that law enforcement had conducted any additional investigation into Mark Chamberlain. After the April 18 transaction, police investigated the residence that the dealer entered at 2139 Anchor Street and discovered that Jean Paul Gulle owned the property and James Rose was registered to vote at the property. Police did not investigate either of these individuals. They did not know which, if either, sold drugs to the CI. Nor did police know which, if either, currently resided at 2139 Anchor Street.

The premise that 2139 Anchor Street was possessed by the dealer being investigated on April 18 rests on the mere fact that the dealer entered the residence with a key on one occasion. Police never conducted surveillance of 2139 to show that the person selling drugs to the CI resided there. The affidavit does not aver that the dealer ever spent the night there. Police never conducted surveillance showing the dealer coming and going from the residence. There is certainly no indication in the affidavit that law enforcement personnel had seen the dealer leave that address immediately prior to either of the first two controlled buys. There is no information from an informant or neighbors regarding who resided at 2139 Anchor Street.

Because the affidavit failed to meet the preliminary premise that 2139 Anchor Street was

in possession of, or the domicile of the dealer, the issuing magistrate could not have found probable cause to search the residence.

> 2. *Officer Bogan failed to provide evidence that the residence at 2139 Anchor Street contained contraband linking it to the dealer's activities.*

After three days of surveillance, and no specific surveillance of 2139 Anchor Street, officers never observed the suspected drug dealer leave 2139 Anchor Street. He was only seen entering the residence once. Police never observed actions that would suggest evidence of drug dealing existed in the home. For example, officers never saw the dealer carrying any packages into or out of the residence. *See United States v. Elizondo*, 331 F. Supp. 3d 757, 764 (E.D. Mich. 2018) (finding no sufficient nexus to find probable cause where affidavit did "not provide any information regarding what, if anything, defendant was carrying when he exited his home" and made "no mention of any criminal activity suspected or observed at the residence, and, in fact confirms only that [defendant] distributed drugs from a red Ford Explorer Sport Trac" (internal quotation marks omitted)). They also never saw other known drug dealers enter into or meet in front of the residence. *See United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (noting the requirement that "some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, we have required facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence").

The only evidence seemingly connecting 2139 Anchor Street with the dealer's alleged drug dealing activities is the fact that he went there on one occasion. But under *Stearn* and *Burton*, the inferential leap required for the magistrate to conclude that because a dealer purportedly sold drugs on a few occasions, there is evidence in the home he entered on one

occasion, is too far. The government likely will argue a connection was evident from the fact that after the April 18 transaction, he was observed returning to the home. But simply returning to the residence does not add to a finding of probable, where the dealer did not enter the home with any packages or contraband and did not leave the home immediately prior to any drug transaction, and there is no evidence that the dealer actually lives in the home.

The relevant factors articulated in *Stearn* also demonstrate the magistrate did not have a substantial basis to find probable cause in this case. First, there is no evidence that the dealer was involved in a large-scale drug operation. Police observed only two drug sales for $40 each. Officers never observed the dealer selling drugs to anyone besides the CI. *See Brown*, 828 F.3d at 383 n.2 (noting that although a nexus may be sufficient where an affidavit does not "contain facts showing that the residence had been used in drug trafficking," cases so holding "are distinct from the typical drug trafficking case . . . because the affidavits did not just establish that the defendants were drug dealers, but contained overwhelming evidence that the defendants were *major players* in a large, ongoing drug trafficking operation" (emphasis added) (citing cases)).

Second, officers never questioned the dealer about his address or residence, and, therefore, he did not evade any inquiry.

Third, in his affidavit of probable cause, Officer Bogan made irrelevant conclusions regarding where evidence was likely to be found based on his experience as a police officer. *See* Attachment A. He asserted that based on his experience, he knew that drug traffickers "will drive around and make deliveries to potential buyers to make it harder on Law Enforcement to track and follow them back to their residence where they may store additional narcotics, weapons, and proceeds [. . . .]" Officers never witnessed the dealer attempt to evade law enforcement in his vehicle or prevent them from following him to his residence. The only time the dealer arrived in

a vehicle, the dealer merely showed up to a deal in a car and then drove around the block to park. He made no attempt to prevent anyone from following him. Police lost track of him when they circled the block and have no idea where he went after leaving his vehicle. Therefore, "the conclusions of experienced officer" are irrelevant and fail to connect drug activity to 2139 Anchor Street. Indeed, an expert's opinion in a search warrant affidavit must be "tailored to the specific facts of the case to have any value." *Zimmerman*, 277 F.3d at 433 n. 4 (citation omitted). Officer Bogan provided no such facts. In any event, although a magistrate judge may "give considerable weight to the conclusions of [an] experienced law enforcement officer[ ] regarding where evidence of a crime [is] likely to be found," *Hodge*, 246 F.3d at 307, an officer's "experience and expertise, without more, is insufficient to establish probable cause," *United States v. Loy*, 191 F.3d 360, 366 (3d Cir. 1999).

Fourth, the proximity of 2139 Anchor Street to the location of criminal activity means little to a finding of probable cause in this case. It is unclear who picked the location of the purchase, and even though the location of the transaction was close to 2139 Anchor Street, the dealer arrived in a vehicle, not on foot, for the first transaction. It is unlikely that the dealer would get in a vehicle to make the 350-yard drive to the location of the transaction. It is far more likely that the dealer was coming from a completely different location, and therefore, the drugs' origin was not 2139 Anchor Street.

Fifth, even if the officers had probable cause to arrest the dealer on drug-related charges based on the observed drug deals, those deals, as described, had no connection to 2139 Anchor Street.

Lastly, the officers had received no information from neighbors or concerned citizens that any illegal items could be found at 2139 Anchor Street. The CI never mentioned the residence

and provided no information that would cause the officers to believe the dealer stored drugs in the home or otherwise used the home to conduct drug-dealing business.

The "critical element" of a constitutionally valid search "is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily,* 436 U.S. 547, 556 (1978); *see also United States v. Tehfe*, 22 F.2d 1114, 1117 (3d Cir. 1983). Officer Bogan suspected the unidentified drug dealer of committing a crime, but he had no reasonable cause to believe illegal narcotics would be found in the residence at 2139 Anchor Street.

Apart from the general proposition that drug dealers might keep contraband in their homes, there is no evidence set forth in Officer Bogan's affidavit to suggest the residence at 2139 Anchor Street contained contraband. Accordingly, all evidence discovered in 2139 Anchor Street must be suppressed.

### B.     The Good Faith Exception Does Not Apply In This Case

It is clear that the search warrant in this case is defective for lack of probable cause. The "good faith exception" does not save the defective warrant or the search of 2139 Anchor Street. The "good faith exception instructs that suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority, even though no probable cause to search exists." *Zimmerman*, 277 F.3d at 436 (quotations omitted). In determining whether the exception applies, courts must decide "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *Hodge*, 246 F.3d at 307 (quotations omitted). Ordinarily, a magistrate judge's issuance of a warrant "typically suffices to prove that an officer conducted a search in good faith

and justifies application of the good faith exception." *Id.* at 307-08. There are circumstances, however, "where an officer's reliance on a warrant would not be reasonable and would not trigger the good faith exception." *Zimmerman*, 277 F.3d at 436 (quotation omitted).

The Third Circuit has set forth four circumstances in which the good faith exception does not apply:

> 1. Where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> 2. Where the magistrate abandoned his or her judicial role and failed to perform his or her neutral and detached function;
>
> 3. Where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

4. Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Id.* at 436-37 (citations omitted). In this case, the third circumstances exists and prevents the application of the good faith exception.

As the Third Circuit cogently explained in *Zimmerman*, the good-faith exception does not apply where any "reasonably well-trained officer in the 'stationhouse shop would recognize as clearly insufficient the affidavit that was presented to the magistrate.'" *Zimmerman*, 277 F.3d at 437. When the police have failed to present a "colorable showing" of probable cause, the "warrant and affidavit on their face preclude reasonable reliance." *Id.*

Here, law enforcement failed to act "in objectively reasonable reliance" on the search warrant. Indeed, any reasonable officer would have known that the affidavit should have included more information that 2139 Anchor Street was the unidentified drug dealer's residence, and more information establishing a nexus between alleged drug activities and the residence. Officer Bogan makes no attempt to connect 2139 Anchor Street to any drug activities and provides no information regarding the *Stearn* factors.

Because the affidavit fails to establish that the dealer resided at 2139 Anchor Street or an objectively reasonable nexus between the criminal activity and 2139 Anchor Street, the good faith exception is inapplicable. *See, e.g., United States v. Myles*, 307 F. Supp. 3d 676, 683 (E.D. Mich. 2018) (finding good faith exception inapplicable where officers did not "attempt to set up any controlled purchase at or near the apartment," and otherwise made no "attempt to connect the purported drug trafficking with the apartment"); *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (holding good faith exception inapplicable where affidavit failed to make connection between residence to be searched and criminal activity); *United States v. Hove,* 848

F.2d 137, 139-40 (9th Cir. 1988) (same); *cf. Greenstreet v. County of San Bernardino,* 41 F.3d 1306, 1309 (9th Cir. 1994) (holding, in qualified immunity context, that officer's reliance on search warrant was unreasonable where affidavit "provided next to nothing about the [searched] residence").

### C.     Mr. Chamberlain's Statement Must Be Suppressed

In the midst of law enforcement's operation on April 22, 2019, following his arrest, Mr. Chamberlain provided a statement regarding the location of contraband in his home to police. This statement was both coerced and fruit of the illegal search of his residence. As such, the Court must suppress Mr. Chamberlain's statement.

#### 1.   *The statement was involuntary*

Under information and belief, police officers used psychological coercion to produce an involuntary statement from Mr. Chamberlain. The statement must be suppressed for any purpose at trial to comport with Mr. Chamberlain's Fifth Amendment Due Process rights.

"The Due Process clauses of the Fifth . . . Amendment bar the use of incriminating statements that are involuntary." *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) (citing LaFave, et al. 2 Criminal Procedure § 6.2(b), p. 444 (2d ed. West 1999)). The purposes of the voluntariness standard is "to ensure the reliability of incriminating statements and to deter improper police conduct." *Lam*, 304 F.3d at 264 (citation omitted). The Supreme Court has held that "a statement is involuntary when the suspect's 'will was overborne in such a way as to render his confession the product of coercion.'" *Id.* (quoting *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991)). Coerced statements cannot be introduced at trial for any purpose.  *Mincey v. Arizona*, 437 U.S. 385, 397-98 (1978).

Psychological coercion may render a confession involuntary. *Miller v. Fenton*, 796 F.2d

598, 603-04 (3d Cir. 1986) (citing *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960)) (additional citations omitted). To determine whether a statement is voluntary, the Court must "consider[] . . . 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" *Lam*, 304 F.3d at 264 (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000)). The Supreme Court has made clear that "[t]hese surrounding circumstances include 'not only the crucial element of police coercion,' . . . but may also include 'the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health.'" *Lam*, 304 F.3d at 264 (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *Withrow v. Williams*, 507 U.S. 680, 693 (1992)).

A large group of police officers broke open Mr. Chamberlain's door and placed him under arrest. After arresting Mr. Chamberlain, Officers Bogan and DeVeaux searched his person and found illegal narcotics. Thus, the officers used the coercive atmosphere of breaking open Mr. Chamberlain's door, placing him under arrest, and finding illegal narcotics on him, to coerce Mr. Chamberlain to admit to storing contraband in his residence. Based on those circumstances—having been arrested in his home by a large team of police officers that had just forced his door open—and on the officers finding drugs on him, Mr. Chamberlain felt overwhelmed and compelled to admit incriminatory information. Indeed, he felt he had no choice but to make a confession. Because his statement was involuntary, it must be suppressed.

### 2. The statement was fruit of the illegal search

Only because the officers illegally entered and search his home did he make an incriminatory statement. As fruit of the illegal search, his statement must be suppressed.

Evidence recovered by exploitation of an unlawful search or seizure must be suppressed as "fruit of the poisonous tree" under *Wong Sun* and its progeny. *See Katzin v. United States*, 769

F.3d 163, 169-70 (3d Cir. 2014); *United States v. Harrison*, 689 F.3d 301, 306 (3d Cir. 2012);

*United States v. Pelullo*, 173 F.3d 131, 136 (3d Cir. 1999). "[T]he exclusionary rule reaches not

only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence

later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'"

*Segura v. United States*, 468 U.S. 796, 804 (1984); *see also United States v. Pelullo*, 173 F.3d

131, 136 (3d Cir. 1999) ("The exclusionary rule mandates that evidence derived from

constitutional violations may not be used at trial because illegally derived evidence is considered

'fruit of the poisonous tree.'" (quoting *Wong Sun*, 371 U.S. at 487-88)). Confessions and

statements that are derivative of a Fourth Amendment violation may be suppressed. *See Wong*

*Sun*, 371 U.S. at 485 ("[V]erbal evidence which derives so immediately from an unlawful entry .

. . is no less the 'fruit' of official illegality than the more common tangible fruits of the

unwarranted intrusion.").

Although the "fruit of the poisonous tree" doctrine does not permit exclusion of evidence

"simply because 'it would not have come to light but for the illegal actions of the police,'" *id.*

(quoting *Wong Sun*, 371 U.S. at 487-88), evidence should be excluded if it has "been come at by

exploitation of [the primary] illegality" rather than "by means sufficiently distinguishable to be

purged of the primary taint," *Wong Sun*, 371 U.S. at 487-88. In deciding whether a statement was

made through the exploitation of a Fourth Amendment violation, courts may consider "the

temporal proximity of the arrest and the confession, the presence of intervening circumstances,

and, 'particularly, the purpose and flagrancy of the official misconduct,'" as well as the provision

of *Miranda* warnings. *United States v. Rivera-Padilla*, 2010 WL 541267 at *3 (3d Cir. 2010)

(quoting Brown, 422 U.S. at 604). The burden of showing admissibility rests on the prosecution.

*See Brown*, 422 U.S. at 604; *Rivera-Padilla*, 2010 WL 541267 at *3 (noting the government

must prove the existence of a break in this chain of events that was sufficient to cure the taint of the constitutional violation and the later confession (citing *Taylor v. Alabama*, 457 U.S. 687 (1982)).

Here, the unlawful search of 2139 Anchor Street directly caused Mr. Chamberlain's confession. No intervening circumstances purged the taint of the constitutional violation; Mr. Chamberlain confessed immediately upon being arrested by police. Because Officer Bogan exploited the illegal search of 2139 Anchor Street to extract a confession from Mr. Chamberlain, all statements made by Mr. Chamberlain following his arrest must be suppressed.

### III.    Conclusion

The search warrant in this case failed to set forth probable cause to believe that evidence would be found in Mr. Chamberlain's home at the time of the search. Officer Bogan's affidavit of probable cause offered no facts suggesting that the suspected drug dealer possessed or resided in 2139 Anchor Street. The affidavit also failed to offer facts connecting 2139 Anchor Street with criminal activity. Because a reasonably well-trained officer would have recognized the affidavit of probable cause to be inadequate, the good faith exception cannot save the search. In addition, Mr. Chamberlain's statement was both involuntary and the fruit of the illegal search of his home. Based on the foregoing, Mr. Chamberlain respectfully requests that the Court suppress the proceeds of the illegal search of his home, including all physical evidence, and any and all statements made following his arrest.

**WHEREFORE**, it is respectfully requested that this Court to grant the instant Motion to

Suppress.

Respectfully submitted,

*/s/ Mark Wilson*
**MARK WILSON**
Assistant Federal Defender


**JAKE O'DONNELL**
Research and Writing Attorney