## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**       :

         **v.**                  :       **CRIMINAL NO. 20-362**

**MARK CHAMBERLAIN**            :

## <u>O R D E R</u>

     **AND NOW**, this      day of  June, 2021, upon consideration of the Defendant's Motion to Suppress Evidence, and the government's response in opposition thereto, it is hereby **ORDERED** that the Defendant's Motion to Suppress Evidence is **DENIED**.


BY THE COURT:


_____
**HONORABLE MITCHELL S. GOLDBERG**
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :

       v.                  :        CRIMINAL NO. 20-362

MARK CHAMBERLAIN         :

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

      The United States of America, by its undersigned attorneys, Jennifer Arbittier Williams, Acting United States Attorney for the Eastern District of Pennsylvania, and Roberta Benjamin, Assistant United States Attorney for the district, respectfully files this *Response in Opposition to Defendant's Motion To Suppress Evidence*.  For the reasons that follow, this Court should deny defendant's motion.  The evidence obtained during the execution of the search warrant at 2139 Anchor Street, Philadelphia, Pennsylvania is admissible because the affidavit of probable cause was sufficient in establishing a nexus between the purchase of illegal drugs and the location to be searched. In addition to this, the defendant's statements were spontaneous and voluntary and not the product of custodial interrogation and, therefore, are admissible.

### Procedural Background

      On October 15, 2020, a grand jury sitting in the Eastern District of Pennsylvania returned a two-count indictment charging defendant Mark Chamberlain with felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count One) and possession of a firearm not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. 5861(d) (Count Two).

The indictment alleges that on or about April 22, 2019, the defendant, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a Smith and Wesson model 36, .38 caliber revolver, loaded with five live rounds of .38 caliber ammunition; and that he knowingly possessed a Remington model SB, 12-gauge sawed-off shotgun, with a barrel of less than 18 inches and which was not registered to the defendant in the National Firearms Registration and Transfer Record, as required by Title 26 U.S.C. § 5841; and both firearms were in and affecting interstate and foreign commerce.

**Factual Background**

On April 22, 2019, Philadelphia law enforcement personnel were conducting surveillance near 2139 Anchor Street, Philadelphia, Pennsylvania (subject property), in order to execute a search warrant that they had obtained for that location. Based on intelligence information obtained from the Criminal Intelligence Unit, and two undercover purchases of crack cocaine by a confidential informant who had proven reliable in the past, Philadelphia Police Officer Timothy Bogan had prepared an affidavit in support of the search warrant. The affidavit included details of those prior undercover purchases of crack cocaine. In particular, the affidavit outlined that a car, later identified as belonging to the defendant was used by the seller of crack cocaine, in the first undercover purchase of the illegal drugs, on April 16, 2019. Also, surveillance of the second undercover purchase of crack cocaine by Philadelphia police officers included observations of the defendant entering the subject property with a key just after the sale of drugs, on April 18, 2019 and of the defendant's car parked outside the subject property at this same time.

Before the search warrant was executed on April 22, 2019, Philadelphia police officers set up surveillance of 2139 Anchor Street. Another undercover purchase between the same confidential informant who had proven reliable in the past and the previous seller of crack cocaine was arranged using the same telephone number as the other undercover purchases. The seller met the confidential informant on the 2100 block of Anchor Street. The seller was observed exiting 2139 Anchor Street and walking over to the confidential informant. An undercover purchase of crack cocaine was completed. The seller was observed returning to 2139 Anchor Street.[1] At this point in time, Philadelphia Police Officer Jeffrey Galazka knocked on the front door of 2139 Anchor Street and announced that he had a search warrant. Officer Galazka heard movement inside as if someone was running away from the front door. The Philadelphia police officers were ordered to breach the front door which they did. Once inside, the police continued to announce that they had a search warrant. During this breach and entry of the property, Officer Bogan had been and continued to cover the rear of the house to ensure that no one exited the property from the back of the building.

Officer Galazka stopped the person whom he had observed sell the crack cocaine to the confidential informant, later identified as the defendant Mark Chamberlain, in the

---

[1] Information about this additional undercover purchase of crack cocaine from the defendant on April 22, 2019, was not included in the affidavit for the search warrant of the subject property. However, this information is relevant to show that the police officers acted in good faith in the execution of the search warrant. Even though the probable cause outlined in the affidavit for the search warrant that evidence of illegal drug trafficking activity would be located in the subject property was sufficient to obtain the warrant, the officers' decision to arrange another undercover purchase of crack cocaine from the defendant just before he entered the subject property, demonstrates their good faith intentions.

kitchen of the house. In a pat down search for safety, Officer Galazka recovered drugs and a .38 Smith and Wesson model 36 revolver with five live rounds with brown wooden grips and serial number 8J8203, and a cell phone which had the same telephone number used for the undercover sales of the crack cocaine to the confidential informant. At the time that Officer Galazka first approached the defendant, Sgt. Patric Love, of the Philadelphia Police Department, was with him. The defendant spontaneously stated to the officers that he "just got the gun and didn't want any trouble." The defendant, Chamberlain, volunteered that he had gotten the gun after the shootings on Benner and Torresdale and Anchor and Torresdale; and that he carried the revolver around for his own protection while on the street. The defendant also said that he had a shotgun in the basement and didn't want any problems with his family. Officer Galazka searched the basement and recovered from the rafters, an unloaded Remington model SB sawed off shotgun, with serial number 414058. The defendant was very cooperative with the police officers and spontaneously volunteered these statements. There were no questions asked of the defendant and no conversation between the officers that prompted the defendant to make the statements that he did.

In addition to the seizure of the loaded revolver and sawed-off shotgun described above, the search of 2139 Anchor Street resulted in the seizure of many items, including but not limited to the following: two pieces of mail in the defendant's name and the Anchor Street address, loose chunks of crack cocaine, a packet of suspected heroin, 26 packets of suboxone, seven packets of suspected crack cocaine inside a knotted sandwich baggie, oxycodone pills, two ziplock bags with a picture of an apple on them and both containing numerous new/unused clear ziplock packets, Samsung cellphone, digital

4

scale, and $420 in various denominations. Field tests on the suspected crack cocaine and heroin were positive for the illegal narcotics.

## A. The Search Warrant

On April 22, 2019, Philadelphia Police obtained a search warrant for 2139 Anchor Street, Philadelphia, Pennsylvania (SW). A summary of the facts that established the probable cause to search 2139 Anchor Street follows:

(a) Officers with the Philadelphia Police Department (PPD) had received information, on approximately April 15, 2019, that a black male named "Ron" with a telephone number of 215-609-7495 (suspect phone number) was selling drugs in the area of Anchor and Torresdale Avenue.

(b) PPD set up surveillance, on April 16, 2019, in the area of Anchor and Torresdale Avenue. An undercover purchase of crack cocaine by a confidential informant (CI) who had proven reliable in the past, was arranged by calling the suspect phone number.

(c) The undercover purchase that took place on April 16, 2019, occurred when a Nissan Quest, with Pennsylvania plates KYZ-0624, that was driven by a black male met with the CI in the prearranged area of the 5400 block of Torresdale Avenue. The driver of the Nissan Quest sold crack cocaine to the CI in exchange for money. The Nissan left the area and was followed to Anchor and Tulip Street where it was parked. Because of limitations of the PPD surveillance, the officers did not see who exited the car.

(d) Further investigation revealed that the Nissan Quest was registered to Mark Chamberlain of 1235 S. 58th Street, Philadelphia, Pennsylvania. As a result, additional surveillance of the 1200 block of S. 58th Street was set up, on April 17, 2019. It did not result in finding the Nissan Quest at that location.

(e) On April 18, 2019, an additional undercover purchase of cocaine base was arranged between the CI and the same seller, using the suspect phone number. This time, the seller met the CI on foot on the 2100 block of Anchor Street and completed the sale of the crack cocaine. Officers continued to conduct surveillance of the seller of the crack as he walked to 2139 Anchor Street, **opened the door with a key**, and went inside. In addition to this, officers observed the **Nissan Quest parked in front of 2139 Anchor Street, Philadelphia, Pennsylvania.**

(f) A real estate check of the property showed that it was owned by a Jean Paul Gulle  and that a James Rose was registered to vote with that address as his residence.

## B.  The Defendant's Statements

As noted above, the defendant was being patted down for the safety of the PPD Officers involved in the execution of the search warrant of 2139 Anchor Street. Upon finding the loaded revolver on the defendant's person, the defendant spontaneously and voluntarily stated that he "just got the gun and didn't want any trouble." He also stated that he had gotten the guns after recent shootings in the area and that he carried the revolver for his own protection on the street. He further stated that he had a shotgun in the basement and didn't want any problems with his family. The officers never asked the defendant any questions and they did not have a conversation between themselves that would have provoked any response by the defendant.

I.    **<u>Argument</u>**

**<u>The Search Warrant</u>**

In his motion to suppress, the defendant claims the affidavit of probable cause was insufficient within its four corners because there was no nexus between the drug trafficking activity and his residence. He further claims that any statements he made were not voluntary and, regardless, that they were fruit of the poisonous tree having being made as the result of an insufficient search warrant. He also claims that the good faith exception to the warrant requirement would not apply because the warrant was based on "an affidavit so lacking in indicia of probable cause as to render official belief

in its existence entirely unreasonable." These arguments lack any merit based on the facts of this case and, therefore, this Court should deny his motion to suppress.

### A. The evidence seized from defendant's home pursuant to the search warrant is admissible.

Probable cause is a flexible, common-sense standard. *Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535, 1543, 75 L. Ed. 2d 502 (1983). Probable cause exists where "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been…committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S. Ct. 1302, 1310–11, 93 L. Ed. 1879 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790). The standard for probable cause is a very low bar. *Id.* at 174. When working with the standard of probable cause, the police and the court must deal with probabilities. *Id.* at 175.

While the probable cause standard was, in part, enacted to protect citizens from unreasonable intrusions of privacy, it is also designed to give officers "fair leeway for enforcing the law in the community's protection." *Id.* at 176. In the course of executing their duties, officers are faced with ambiguous situations, and there must be room for officers to make reasonable mistakes when acting on the facts that sensibly lead to their conclusions of probability. *Id.* "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement." *Id.*

A magistrate's determination of probable cause should be paid great deference by reviewing courts. *United States v. Harvey*, 2 F.3d 1318, 1321–22 (3d Cir. 1993). The duty of the reviewing court is simply to ensure that the signing authority had a substantial basis for concluding that probable cause existed. In evaluating a search warrant, the Court should "[k]eep in mind that the task of the issuing magistrate is simply to determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place" and "uphold the warrant as long as there is substantial basis for a fair probability that evidence will be found." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993). Here, based on all of the evidence set forth in the affidavit, this standard was easily met.

1. **The affidavit accompanying the search warrant is sufficient and showed a substantial basis for probable cause.**

The defendant asserts that the PPD did not adequately establish in the affidavit that evidence of the defendant's illegal drug trafficking would be found in the subject property. This argument lacks merit. The affidavit is sufficient and establishes probable cause that evidence of drug trafficking activity would be located at 2139 Anchor Street, Philadelphia, Pennsylvania (the subject property). *See Government Exhibit A, Search Warrant for the subject property*. The facts contained in the affidavit for the SW include (1) that the defendant was observed entering the subject property with a key just after the undercover purchase, on April 18, 2019; (2) that the defendant's Nissan Quest (defendant's car) was parked in front of the subject property at the time of the undercover purchase of crack cocaine from him, on April 18, 2019; and (3) that the defendant's car was used in the initial undercover purchase of crack cocaine on April 16,

2019. Clearly, a connection between the defendant, the defendant's car-- which was used by the seller of crack cocaine in the first undercover purchase of illegal drugs, on April 16, 2019, and parked in front of the subject property at the time of the second undercover purchase of illegal drugs on April 18, 2019-- and the subject property which the defendant was observed entering with a key just after the sale of drugs, on April 18, 2019, was established in the affidavit. The requisite standard for a sufficient affidavit is probable cause that evidence of the criminal activity is located in the premises to be searched and not that the facts establish this beyond a reasonable doubt.

The Third Circuit has held that "direct evidence linking the crime to the location to be searched is not required to support a search warrant." *United States v. Whitner*, 219 F.3d 289, 297 (3d Cir. 2000).  Neither the issuing judge nor the reviewing courts should engage in line-by-line scrutiny of the warrant application's affidavit.  *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008); *see also United States v. Allen*, 211 F.3d 970, 973 (6th Cir.2000) (quoting Gates, 462 U.S. at 246 n. 14, 103 S.Ct. 2317). Rather, a totality of the circumstance approach should be used when reviewing affidavits, and probable cause can be inferred by "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.'" *Id.* (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993)).  "If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases." *Jones*, 994 F. 2d at 1056.

Here, we not only have evidence that the defendant is connected to the subject property by his access to the residence and the parking of his car in front of it, but also,

that he chose to enter the subject property, with a key, immediately after conducting an illegal drug transaction. In addition to this, the affidavit included the results of surveillance of the defendant's car after the first undercover purchase of narcotics on April 16, 2019. The car was not observed at the address for which the defendant's car was registered, that is, 1235 S. 58th Street. Based on the totality of the circumstances, the affidavit establishes that there was probable cause to believe that evidence of drug trafficking would be found inside the subject property.

Contrary to defendant's submission, criminal activity within a residence is not a prerequisite for searching the residence for evidence associated with a crime. *United States v. Williams*, 544 F.3d 683, 686–87 (6th Cir. 2008)(holding reasonable to suppose criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there); *see also United States v. Feliz*, 182 F.3d 82, 87–88 (1st Cir.1999) (holding that it reasonably could be supposed that a drug dealer stored evidence of dealing at his home, though no drug trafficking was observed to occur there.) Therefore, there was probable cause to believe that illegal drugs and/or proceeds from the undercover purchases with the defendant, as observed by PPD officers during their surveillance of the defendant, his car, and the property, would be found at the subject property. Thus, the affidavit sufficiently sets forth probable cause to believe that 2139 Anchor Street, a residence which the defendant entered with a key, would contain evidence of the defendant's illegal drug trafficking activity. The defendant's motion to suppress evidence should be denied.

**B. The good faith exception to the exclusionary rule would apply if the affidavit of probable cause and search warrant were lacking.**

Even if the defendant had advanced a legitimate argument that the affidavit was lacking, the evidence seized as a result of the execution of the search warrant should not be suppressed because the warrant falls under the good faith exception to the exclusionary rule. The defendant moves to suppress the items seized from the search of the defendant's residence pursuant to the exclusionary rule because he incorrectly alleges that the search was unsupported by probable cause. Even if the Court were to adopt this incorrect view, the record is clear that all of the officers involved had good faith that they were acting according to law as established in *United States v. Leon*, 468 U.S. 897 (1984). In *Leon*, the Supreme Court recognized that:

> [T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial cost of exclusion [. . .] [T]he good faith exception, turning as it does on objective reasonableness, should not be difficult to apply in practice. When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time.

*Id.* at 922, 924.

The good faith exception to the exclusionary rule instructs that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001); *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993); *see United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1107 (3d Cir. 1989). The test for

whether the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *Hodge*, 246 F.3d at 307. *See also United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 145 (3d Cir. 2002). The Court has identified four narrow situations in which an officer's reliance on a warrant is not reasonable: "(1) when a magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;' or (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." *Id.* 307 F.3d at 146, *quoting Williams* at 74 n.4. None of these are present here.

Here, the defendant simply argues that all evidence seized pursuant to the warrant must be suppressed because the affidavit failed to set forth probable cause to search the home. As discussed above, there is no merit to this claim. Even if this were the case, Supreme Court makes clear that suppression is not an automatic consequence of any such putative error. The Supreme Court developed the exclusionary rule to deter unlawful police conduct. *United States v. Leon*, 468 U.S. 897, 905-06 (1984). Here, the detectives did not act unlawfully. Under the circumstances in this case, it cannot be said that the warrant was so facially deficient that the officers could not reasonably and in good faith believe that the warrant was valid. The affidavit attached to the search warrant was sufficient in identifying the defendant as a suspect and 2139 Anchor Street

as a location connected to the defendant, including after a drug trafficking transaction. Moreover, the reviewing authority who carefully reviewed the affidavit found that there was probable cause to conduct the search.  Under these circumstances, it was objectively reasonable for the detectives involved to believe that the officer who secured the order did so in the appropriate manner and to rely in good faith on the order issued by the judge. "[I]t must . . . be remembered that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985). *See United States v. Singh*, 390 F.3d 168, 183 (2d Cir. 2004) (upholding district court's denial of motion to suppress due to applicability of good faith exception); *United States v. Kepner*, 843 F.2d 755, 764 (3d Cir. 1988) (reversing district court's suppression order when agent relied in good faith on valid search warrant); *United States v. Wecht*, No Crim. 06-0026, 2006 WL 1669879 (W.D. Pa. Jun. 13, 2006) (denying motion to suppress evidence recovered from physician's office because search team members acted reasonably and in good faith in relying on warrant and affidavit).

Any reasonably well-trained officer would have believed that there was a sufficient nexus between the defendant and 2139 Anchor Street, and that evidence of his drug trafficking activity would be found at the subject property.  In fact, as noted above, the officers conducted one more undercover purchase of narcotics from the defendant just before executing the SW. As suspected, the defendant entered the subject property immediately after the completion of this third illegal narcotic transaction. Accordingly, the officers and detectives in this case acted in good faith when they searched 2139

Anchor Street.  As such, the good faith exception applies, and any evidence recovered pursuant to the order was done so lawfully.

### The Statements

The defendant argues that the PPD officers used "psychological coercion" to force him to make statements in violation of his Fifth Amendment rights. In the alternative, he argues that all statements should be suppressed as the results of an illegal search of his residence.  These arguments have no merit. Instead, the facts show that upon entry into the property with a legal and sufficient search warrant, the defendant was patted down for safety. As a result, a loaded firearm was found in his possession.  The defendant then decided to spontaneously and voluntarily offer an explanation for the firearm. He further indicated that he didn't want any trouble and mentioned an additional firearm that he had in the basement of the property. Accordingly, the defendant's motion to suppress his statements should be denied.

A. **The defendant's statements were voluntary and spontaneous and are admissible.**

*Miranda* warnings are required when a person is in custody and subject to interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966).  At the time of his statements, the defendant had just been patted down for safety and found in possession of a loaded firearm. He was being placed into custody and had not received any *Miranda* warnings. However, *Miranda* applies only to "interrogation." *Miranda*'s protections "come into play whenever a person in custody is subjected to either express questioning or its functional equivalent," that is, "the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police . . . that

the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). "[S]ince the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id.* at 301-02 (emphasis in original).

In *Innis*, police officers transporting a robbery suspect, who had invoked his right to remain silent, made offhand remarks to each other, discussing the need to continue to search for the missing robbery weapon in the area lest a child come across it. At that point, the suspect interrupted the conversation and volunteered to take the officers to the gun. The Supreme Court held that the officers' discussion with each other, in which no question was posed to the defendant, was not the functional equivalent of interrogation.

Even had the PPD officers responded to the defendant's voluntary statements with a follow up question, *Miranda* would not have been required. *See United States v. Rommy*, 506 F.3d 108, 133 (2d Cir. 2007) ("*Miranda* concerns are not implicated in follow-up questions to volunteered statements." See also, *United States v. Koontz*, 143 F.3d 408, 411 (8th Cir. 1998) (holding that "statements made in response to a law enforcement officer's attempt to seek clarification of a defendant's remarks, during an interview requested by the defendant, are not the products of interrogation"); *United*

*States v. Gonzales*, 121 F.3d 928, 940 (5th Cir. 1997)[2] (ruling that "when a suspect spontaneously makes a statement, officers may request clarification" of ambiguities "without running afoul of the Fifth Amendment"); *Andersen v. Thieret*, 903 F.2d 526, 532 (7th Cir. 1990) (rejecting custodial interrogation challenge when, in response to suspect's volunteered statement, "I stabbed her," police asked, "Who?"); *United States v. Rhodes*, 779 F.2d 1019, 1032 (4th Cir. 1985) (holding that no interrogation occurred where, in response to suspect's volunteered statement, "You can't take that," police inquired, "Why?" and suspect replied, "I can't run my business without that").

Here, the facts reveal that there was nothing that could even be interpreted as a question, much less interrogation within the meaning of *Miranda*. The defendant was cooperative and did not want any trouble with his family. Consequently, he voluntarily and spontaneously provided an explanation for the loaded revolver that had just been found in his possession. He indicated that he kept the revolver for security and because of recent burglaries in the area. Since the PPD would have found the defendant's sawed-off shotgun in the basement as they executed the search warrant, and the defendant was already found with one firearm, it is reasonable that the defendant offered this information hoping this might avoid any lengthy search which might have disclosed other illegal materials.

Clearly, there was no evidence that the PPD officers coerced the defendant to involuntarily make the statements that he did. Also, it is clear that the statements are

---

[2] *United States v. Gonzales*, 121 F.3d 928, 940 (5th Cir. 1997), *overruled on other grounds by United States v. O'Brien*, 560 U.S. 218, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010).

not the "fruit of the poisonous tree," as claimed by the defendant owing to his belief that the SW was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." As discussed above, the SW was sufficient. Even if the affidavit was found lacking , it was certainly not so devoid of the requisite content to preclude the application of the good faith exception to the exclusionary rule. The statements should not be suppressed.

## II.     **Conclusion**

For the reasons set forth above, the government respectfully requests that this Court deny defendant's motion to suppress lawfully obtained evidence.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


 _s/Roberta Benjamin_____
ROBERTA BENJAMIN
Assistant United States Attorney


Dated: June 7, 2021

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing *Government's Response in Opposition to Defendant's Motion to Suppress Physical Evidence* was served by electronic filing transmission and/or e-mail upon:

Mark Wilson, Esquire
Assistant Federal Defender
Defender Association of Philadelphia
The Curtis Center Building
601 Walnut Street B Suite 540 West
Independence Square West
Philadelphia, PA 19106
Mark_Wilson@fd.org


_s/ Roberta Benjamin_____
ROBERTA BENJAMIN
Assistant United States Attorney


Date: June 7, 2021